IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| JEAN D. FRANCIS, | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. TDC 21CV2801 ) ) |
| WESTERN GOVERNORS' UNIVERSITY (WGU), a UTAH CORPORATION; | ) ) ) ) JURY TRIAL DEMANDED |
| Defendant. | ) ) ) ) Dated: October 29, 2021 |

## COMPLAINT

Plaintiff Jean D. Francis, Ph.D. ("Dr. Francis" or "Plaintiff"), for her Complaint against Defendant Western Governors' University ("Defendant") alleges as follows:

## NATURE OF THE CASE

1. This is a public enforcement action to correct the unlawful employment practice of retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), based on race, color, religion, sex, and national origin; and Title VII of the Civil Rights Act of 1991, 42 U.S.C § 1981a, Section 102. This action seeks to provide appropriate relief to Jean D. Francis, who was adversely affected by such practices.

1

2. The harms caused to Plaintiff by Defendant include an unlawful chain of employment discrimination and retaliation actions against Plaintiff when it suspended and terminated her employment. This action came immediately after Plaintiff exercised her rights under Title VII for filing an IT complaint against her supervisor, Karen Fisher, for violating her privacy when she accessed her computer and emails, while Plaintiff was on Family and Medical Leave Act (FMLA) leave from April 1 – 23, 2018. The termination came one week after Plaintiff filed her complaint and one week before she achieved her two-year tenure with the university.

3. Plaintiff seeks to recover damages in the form of, but not limited to, lost wages and benefits, out-of-pocket expenses, and monetary loss as well as pre-judgement interest, attorneys' fees and costs resulting from Defendant's discrimination against Plaintiff in terms and conditions of her employment based on her race, age, gender. Plaintiff further seeks remedies under the applicable federal and state discrimination and retaliation laws.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § § 451, 1331, 1337, 1343 AND 1345.

5. Plaintiff filed a timely charge alleging, racial discrimination and retaliation with the U.S. Equal Employment Opportunity Commission (EEOC) on November 27, 2018, which was assigned charge number 540-2019-00711. The EEOC issued Plaintiff a Notice of Right to Sue on July 30, 2021. (***Exhibit 1***)

6. Venue in this Court is proper and is predicated on Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a),2000e-3(a), 2000e-5(f)(3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

7. The employment practices alleged to be unlawful and giving rise to Plaintiff's claims occurred within the boundaries of this judicial district.

## FACTUAL BACKGROUND

8. Plaintiff is Black.

9. Plaintiff is Female.

10. On or about June 20, 2016, Plaintiff began her employment with the Defendant as a Course Mentor for Finance.

11. There were six Course Mentors on the Finance and accounting team at that time. The team was made up of 1 Caucasian male, 2 African American females, and 3 African American males. We were all assigned to the undergraduate team.

12. At the time of the hire, Plaintiff was paid an annual salary of $60,000 a year, plus annual allowances, and bonuses.

13. Defendant's Program Manager, Mr. Russel Handlon, was Plaintiff's supervisor.

14. On or about October 2016, another supervisor, Ms. Amy Austin, became Plaintiff's supervisor. Immediately, Plaintiff began experiencing persistent reprimand from Ms. Austin, regarding alleged student complaints. Ms. Austin would say, "I don't want to do this, but Elizabeth (Elizabeth Broyles, Caucasian female) wants me to."

15. At WGU, the Finance and Accounting courses were the most difficult courses for students and the ones with the highest student enrollments.

16. Soon after Plaintiff came on board, the management intentionally gave the Caucasian male team lead a better job by transferring him from the undergraduate team to the Finance graduate team after numerous alleged student complaints.

17. Students also laid alleged complaints against one of the African American Accounting team members who taught Taxation Accounting, and he was fired a few weeks after Plaintiff's tenure.

18. There were only four African American course mentors remaining on the team and each were assigned extremely high student caseloads.

19. Plaintiff and the remaining three course mentors worked tirelessly to meet WGU's goals and objectives. Unfortunately, after Austin became our supervisor, the only other African American Female course mentor, Natalie Walker, was fired immediately for alleged "student complaints."

20. Defendant declared in its July 6, 2021, EEOC response that "only one other employee also had notable performance issues. He was provided with similar opportunities to improve, including a PIP. He did not improve his performance and was ultimately involuntarily terminated according to WGU's standard processes and procedures, just as Dr. Francis was terminated." Yet, it failed to mention it also terminated the Plaintiff's colleague, Dr. Natalie Walker, employment.

21. Defendant's admission that it terminated "only one other employee just as Dr. Francis was terminated" indicates its discriminatory practices against people of color. The employee was an African American as well as Dr. Walker and Plaintiff.

22. Defendant also claimed in its July 6, 2021, EEOC response that, "Dr. Francis Repeatedly Failed to Meet Performance Expectations During Her Employment at WGU." Plaintiff denies this claim.

23. Defendant employed the use of alleged "student complaints" as a performance indicator for African American Course Mentors to terminate their employment.

4

24. Defendant's Performance Goals that course mentors were to meet monthly are: (1) the amount of student called and, (2) the number of students completed or passed the Finance course. There were no performance measures relating to "number of student complaints."

25. Based on Plaintiff's performance scorecards, the evidence will refute the Defendant's claim that the Plaintiff was "repeatedly failing to meet performance expectations."

26. Plaintiff was assigned an enormous number of students--between 435 to 477-- monthly. Her scorecards reflected her continual success in meeting on time progress (OTP).

27. Plaintiff's January 2018 scorecard reveals that her "Successful Completion" percentage rate was 55% of the entire WGU goal of 59%, four months before she was terminated. Plaintiff's scorecards do not show Plaintiff was failing to meet the Defendant's performance expectations throughout her tenure at WGU. (***Exhibit 2***)

28. The Defendant discriminated against Plaintiff and other African American course mentors when it singled us out by placing us on PIPs and terminated our employment for "student complaints," which was not a performance criterion. These alleged complaints were not specific to Plaintiff but university wide.

29. Plaintiff know of no Caucasian course mentor or employee who was terminated because of "student complaint."

30. The amount of student complaints stemmed from the Defendant's poor and antiquated courses that were riddled with errors and discrepancies. The complaints attached to this lawsuit are not even a fraction of the students' complaints regarding course errors, even after Plaintiff was terminated. Yet, no other employee was terminated based on "students' complaints" except those of color. (***Exhibit 3***)

31. On February 8, 2021, Plaintiff was placed on a Performance Improvement Plan (PIP).

32. It is Plaintiff's reasonable and genuine belief that the PIP was not applied to assist her in improving her performance, but rather invoked as the reason to get rid of her by foul means pursuant to the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII").

33. At no time during Plaintiff's one-on-one meetings, which she had with her manager led her to believe that her performance was waning and/or that her performance was in question. Plaintiff was always told during these meetings that her performance, as indicated by my scorecard, was excellent.

34. On May 23, 2018, Defendant terminated Plaintiff's employment shortly after Plaintiff returned from FMLA disability leave, was still in process of recuperating from her disability and after she filed a computer access violation complaint against her supervisor.

35. Defendant claims that it terminated Plaintiff's employment because "students were still complaining." However, it never provided any evidence in support of its claims for the entire year leading to May 23, 2018, that was deserving of her termination.

**FIRST CLAIM FOR RELIEF**

**(Retaliation)**

36. Since at least May 23, 2018, Defendant has engaged in unlawful retaliatory practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) by suspending and terminating the employment of Dr. Francis because she engaged in protected activity when she opposed to Fisher accessing her computer while she was on FMLA leave and filed a complaint with IT on May 18, 2018.

37. The effect of the events described above has been to deprive Dr. Francis of equal opportunities in retaliation for exercising her federally protected rights.

38. The unlawful employment practices described above were intentional.

39. The unlawful employment practices described above were done with malice or with reckless indifferences to the federally protected rights of the Plaintiff.

## **PRAYER FOR RELIEF**

40. WHEREFORE and for the foregoing reasons, Dr. Francis respectfully requests that this court grant her the following relief including, but not limited to:

    A.  The costs and personal time associated with seeking this relief;

    B.  Any other relief this Honorable Board deems just and proper to award;

    C.  Grant a permanent injunction enjoining Defendant, its offices, successors, assigns and all persons in active concert or participation with it, from engaging in any employment practice which retaliates against employees who complain about discrimination;

    D.  Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for employees who exercise their federally protected rights to complain about discrimination and which eradicate the effects of its unlawful employment practices, including but not limited to, rightful-place reinstatement or front pay;

    E.  Order Defendant to make whole Dr. Francis by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above;

    F.  Order Defendant to make whole Dr. Francis by providing compensation for past and future non-pecuniary losses, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and humiliation;

G.  Order Defendant to pay Dr. Francis punitive damages for its malicious and/or reckless conduct described above, in amounts to be determined at trial;

H.  Order Defendant to provide training to its officers, managers and employees regarding discriminatory harassment and retaliation in the workplace;

I.  Grant such further relief as the Court deems necessary and proper in the public interest.

.

**Dated: October 29, 2021**

Respectfully submitted,

*s/ Jean D. Francis, Ph.D.*
JEAN D. FRANCIS, Ph.D,
Pro se'
4602 Stecoah Drive,
Clinton, MD  20735
Jfra169731@aol.com
301-655-5834

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Baltimore Field Office,
G.H. Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201

Sarah Hook, Associate General Counsel
Western Governors University
4001 South 700 East, Suite 700
Salt Lake City, UT 84107

## CERTIFICATE OF SERVICE

41. I HEREBY CERTIFY that on 29th day of October 2021, a true and correct copy of

    Appellant Jean D Francis' Civil Action was served via first class mail to the

    following:

Sarah Hook, Associate General Counsel
Western Governors University
4001 South 700 East, Suite 700
Salt Lake City, UT 84107